IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02133-DDD-SKC

JODABIA S. WEEKS, *an individual and Colorado citizen,*

        Plaintiff,

v.

STEVEN M. SNYDER, *an individual and Florida citizen, and*
AFS-TT, LLC, *a Florida limited liability company.*

        Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the court on Plaintiff Jodabia S. Week's Motion for Default Judgment. [#30.][1] The Motion seeks default judgment under Fed. R. Civ. P. 55(b)(2) against Defendants Steven M. Snyder and AFS-TT, LLC ("AFS") (collectively, "Defendants"). Judge Domenico referred the Motion to the magistrate judge. [#31.] The Court has reviewed the Motion and the entire record. No hearing is necessary. For the reasons stated herein, the Court RECOMMENDS the Motion be DENIED.

### A.    BACKGROUND

This case involves the recovery of monies and "in-kind contributions" provided by Plaintiff to Snyder for a prospective business venture. [#1, ¶4.] In October 2017,

---

[1] The Court uses "[#__]" to refer to entries in the CM/ECF electronic filing system.

Plaintiff and Snyder began discussions concerning the purchase of "softgel encapsulation" equipment and materials to manufacture softgel nutritional supplements. [*Id.* ¶7.] They agreed Plaintiff would provide the funds for the equipment and other business-related expenditures, that the equipment would be shipped to Texas, and that Snyder would periodically travel to Texas to operate the machine (the "Business Agreement"). [*Id.* ¶8.] Under the Business Agreement, Snyder was to remit 90% of the profits from the business venture to Plaintiff until Plaintiff was repaid in full for the purchase price of the equipment and materials. [*Id.*] Thereafter, Plaintiff and Snyder would split profits equally. [*Id.*]

Plaintiff alleges he made initial payments totaling $178,200.00[2] for a softgel encapsulation machine, tumble dryers, and supporting equipment (the "Machinery"). [#30-1, ¶6.] In March 2018, Plaintiff paid an additional $13,645.00 for the Machinery to be released from U.S. Customs and Border Protection ("CBP"). [*Id.* ¶7.] In May 2018, Plaintiff paid $95,910.63 to New Earth Biosciences for raw materials that were shipped to Snyder. [*Id.* ¶9; #1, ¶11.] Between April and December 2018, Plaintiff alleges he paid an additional $93,040.63 for business related expenditures, including rent, the purchase of a work truck, utilities, and raw materials. [#30-1.]

---

[2] Amounts alleged in the Complaint differ at times from those stated in Plaintiff's affidavit in support of the Motion. When necessary, the Court defers to the affidavit where it contradicts the Complaint.

Plaintiff began having problems contacting Snyder in March 2019. He travelled to Tampa, Florida (Defendants' state of residence) on two occasions in an effort to meet with Snyder. [#1,¶¶15,17.] On the second trip, Plaintiff went to Snyder's home but Snyder refused to answer the door. [*Id.* ¶17.] Plaintiff then went to the location where the Machinery and other business equipment were located (either Texas or Florida, although not clear from the Complaint) and found the Machinery gone and the locks changed. [*Id.*]

Plaintiff filed his Complaint against Snyder and AFS (Snyder solely owns AFS) on July 25, 2019, alleging claims of conversion, breach of contract, quantum meruit, unjust enrichment, and seeking an equitable accounting from Snyder.[3] [*See* #1.]

Defendants were personally served in Florida on August 13, 2019. [#5.] Snyder sent a letter on August 23, 2019 ("Letter") to Plaintiff's counsel and the Court based on Plaintiff's Complaint. [#7.] The Letter, which the Court docketed, stated Snyder found the Complaint "unfounded" and he considered it "a form of harassment." [*Id.*] Plaintiff moved to strike the Letter and for entry of default judgment. [#9] Plaintiff argued the Letter was "an insufficient defense to the Complaint" and requested entry of default because Defendants failed to answer. [*Id.* ¶¶5,8.]

The Court then ordered a Status Conference set for December 10, 2019 [#15.] In relevant part, the order stated:

> Defendant Steven M. Snyder is warned that this is a Court Order. As such, he (sic) ORDERED to attend the Conference. He is granted leave

---

[3] The conversion claim is alleged against both Defendants; the breach of contract and quantum meruit claims are alleged solely against Snyder; and the unjust enrichment claim is alleged solely against AFS.

3

> to appear at the Status Conference by telephone because he is located outside of the Denver Metro area. To appear telephonically, Defendant Steven M. Snyder shall call Chambers (303.335.2124) at the time of the Conference.
>
> The Court further admonishes Defendant AFS-TT, LLC of the "long-standing rule that a corporation must be represented by an attorney to appear in federal court." *Tal v. Hogan*, 453 F.3d 1244, 1254 n.8 (10th Cir. 2006). Therefore, Defendant AFS-TT, LLC shall be represented by at (sic) attorney admitted to the bar of this Court at the Conference. See D.C.COLO.LAttyR 5(b). Should either Defendant fail to appear at the Status Conference, they may be subject to an Order to Show Cause why the Court should not enter default for failure to plead or otherwise defend, pursuant to Fed. R. Civ. P. 55(a).

[*Id.*]

When Snyder appeared at the December Status Conference, the Court partially granted Plaintiff's then-pending motion to the extent it sought to strike Snyder's Letter, and denied the portion seeking entry of default. [*Id.*] The Court also advised Snyder of his (and AFS's) ability to move for appointment of *pro bono* counsel and provided a deadline in which to do so, advised Snyder that AFS must be represented by counsel, and gave Defendants additional time to answer or otherwise respond to the Complaint. Thereafter, no one entered an appearance on behalf of either Defendant, and neither Defendant answered or otherwise responded to the Complaint.

Plaintiff moved for the entry of default, which was entered by the Clerk of Court on October 14, 2020.[4] [#29.] Plaintiff now moves for default judgment under Fed. R. Civ. P. 55(b) against Defendants for "their failure to appear or otherwise

---

[4] Entry of default was supported by verified returns of service for each Defendant. [#5 and #6.]

4

acknowledge the pendency of a lawsuit for more than a year after being served." [#30, p.3.]

### B. LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 55(b), default judgment may enter against a party who fails to appear or otherwise defend a case. But a party is not entitled to the entry of default judgment as a matter of right. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-02445-LTB-MJW, 2008 WL 793606, at * 2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn. Ltd. P'ship v. Smith*, 141 F. Supp.2d 277, 281 (D. Conn. 2001)). Even after the entry of default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)).

In determining whether a claim for relief has been established for purposes of the entry of default judgment, the well-pleaded facts in the complaint are deemed true. *Deery Am. Corp. v. Artco Equip. Sales, Inc.,* No. 06–cv–01684, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007). And the court accepts undisputed facts set forth in the affidavits and exhibits. *Id*. But the decision whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003).

### C. DISCUSSION

**1.   Subject Matter Jurisdiction**

In determining whether the entry of default judgment is warranted, the court must first determine whether it has jurisdiction over the subject matter and personal jurisdiction over Defendants. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case. We are convinced that in the instant case the district court was required to determine the personal jurisdiction issue before considering entry of the default judgment and erred by failing to do so."); *Williams v, Life Sav. & Loan,* 802 F.2d 1200, 1202 (10th Cir. 1986) ("A judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties.").

Plaintiff asserts the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00. [#1, ¶5.] The Complaint alleges Plaintiff is a citizen of Colorado while Defendants are domiciled in Florida. [*Id.* ¶¶1,2,3.] Moreover, Plaintiff's affidavit establishes he is seeking judgment in the amount of $381,573.01. [#30-1, ¶15.] Thus, the Court easily concludes it has subject matter jurisdiction. The more involved question is whether the Court has personal jurisdiction over Defendants.

**2.     Personal Jurisdiction**

The Court may only exercise personal jurisdiction over a non-resident defendant in a diversity case when: (1) the state's long-arm statute permits personal jurisdiction; and (2) the exercise of personal jurisdiction comports with the Due

6

Process Clause of the United States Constitution. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The Colorado long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process Clause of the Fourteenth Amendment. *Id.*; *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985). Due process requires both that the defendant "purposefully established minimum contacts within the forum State," and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction. *Intercon v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see also Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). Plaintiff does not allege Defendants' Colorado contacts satisfy the general jurisdiction standard, so only specific jurisdiction is at issue. [*See* #1, ¶6.]

### a. Specific Personal Jurisdiction

Specific jurisdiction means a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *Daimler AG*, 571 U.S. at 127. Thus, even though a defendant's forum state

7

contacts may not support general jurisdiction, they may still meet the less stringent standard for specific jurisdiction if those contacts are sufficiently related to the cause of action. *Id.* Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown the defendant has sufficient minimum contacts with the forum state; and, if so, (b) whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).

> i. Minimum contacts

The minimum contacts test for specific jurisdiction has two requirements: (1) the defendant must have purposefully availed themselves of the privilege of conducting business in the forum state, and (2) a nexus must exist between the defendant's forum-related contacts and the plaintiff's cause of action. *Id.*

The purposeful-availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, … or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. Mere foreseeability of causing injury in another state is insufficient to establish purposeful availment. *Id.* at 474. But "where the defendant deliberately has engaged in significant activities within a State, … he manifestly has availed himself of the privilege of conducting business there." *Id.* at 475–76 (citations and quotations omitted).

In cases involving contacts arising from a contract between the defendant and forum state residents, the purposeful-availment analysis often employs the

8

continuing relationships framework. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 n.11, 905 (10th Cir. 2017) (analyzing the continuing relationships framework and citing contractual minimum contacts cases). Under this framework, the Supreme Court has "upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* at 905 (quoting *Burger King*, 471 U.S. at 473). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Instead, courts evaluate the parties' "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'" to determine whether the defendant purposefully established minimum contacts within the forum state. *Id.* (quoting *Burger King*, 471 U.S. at 479). An out-of-state defendant's solicitations of, or direct communications with, forum state residents also provide some evidence suggesting purposeful direction. *Id.* (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (quotations omitted).

Step two of the minimum contacts analysis evaluates whether the plaintiff's injuries "arise out of" the defendant's forum-related activities. *Id.* at 908. In order for a court to exercise specific jurisdiction, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

As applied to Snyder, Plaintiff alleges a Business Agreement between himself and Snyder. Colorado courts have repeatedly refused to exercise personal jurisdiction over out-of-state defendants where their only contact with the state has been a contractual relationship. *See, e.g., Nuclear Cardiology Sys., Inc. v. Vivek Mangla, M.D.*, No. 10-CV-00045-REB-CBS, 2010 WL 2135298, at *4 (D. Colo. May 25, 2010) ("Merely entering into a contract with a Colorado resident is insufficient in itself to confer specific jurisdiction in this forum"); *Ruggieri v. General Well Service, Inc.,* 535 F. Supp. 525, 535 (D. Colo. 1982) ("Jurisdiction is not proper in Colorado merely because one of the parties to the contract [is] a Colorado resident"). Notably, Plaintiff failed to include a copy of the Business Agreement. While this is not fatal, it makes it more difficult for the Court to determine whether it has personal jurisdiction. This is especially true in light of the bare-bones and conclusory nature of the allegations in the Complaint. For instance, the allegations relating to personal jurisdiction over Snyder include the following:

> [A] substantial part of the events giving rise to the case occurred in Colorado. [Plaintiff] is a Colorado citizen and conducts his business activities from Colorado. The business venture contemplated by the parties involved, in part, the processing and packaging of crops grown on [Plaintiff's] ranch in Colorado. Additionally, all communications from Snyder related to the matters involved in this case were directed to [Plaintiff] in Colorado.

[#1, ¶6.]

Other than these basic allegations, the Complaint is sparse on additional factual allegations to support a finding of specific personal jurisdiction over either Defendant. Indeed, the Complaint alleges the Business Agreement called for the

Machinery to be "shipped to *Texas*, and that Snyder would periodically *travel to Texas* to operate the machine as part of the venture." [*Id.* ¶8 (emphasis added).] It further alleges "Snyder told [Plaintiff] that he would meet him in *Tampa, Florida* on March 6, 2019 to discuss the status of their business venture. Although [Plaintiff] *flew to Tampa* for the March 6, 2019 meeting, Snyder failed to show up for the scheduled meeting and ignored Weeks' communications." [*Id.* ¶15 (emphasis added).] Plaintiff flew to *Florida* a second time thereafter to try to meet with Snyder again. [*Id.* ¶17.] Contrasting these allegations, the Complaint does not allege Snyder flew to Colorado at any time, or that he operated any machinery in Colorado, for example.

The Complaint alleges Plaintiff and Snyder "initiated discussions" concerning the business venture. But this allegation is too vague to support specific personal jurisdiction. There are no allegations Snyder sought Plaintiff out in Colorado, or that he targeted Colorado for this business venture, or any other facts to plausibly allege that any contract negotiations between the parties had such a nexus to Colorado that Snyder deliberately created a relationship with this state or availed himself of the privilege of doing business in this state. There are no allegations regarding where the parties signed the Business Agreement, or whether they agreed Colorado law would apply to any contract disputes. There are no allegations as to how long the parties intended to remain contractually bound. *See Old Republic Ins. Co.,* 877 F.3d at 910 ("[T]he absence of prior negotiations, long-term contractual commitments, or any significant course of dealing distinguishes this case from previous cases finding purposeful direction under the continuing relationships framework.")

11

There are also no factual allegations, beyond the conclusory, that Snyder corresponded or communicated with Plaintiff here in Colorado, through telephone, text messages, electronic mail, or U.S. mail. *See Benton,* 375 F.3d at 1077 ("[a]lthough phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts, the correspondence exchanged between [the parties] during the negotiation of the [agreement] provides additional evidence that [the defendant] pursued a business relationship with a [forum state] business.") As already mentioned, there are also no allegations Snyder traveled to Colorado at all for business reasons, let alone reasons related to the Business Agreement. *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC.*, 234 P.3d 673, 679 (Colo. 2010) (finding personal jurisdiction where defendant travelled to Colorado "on numerous occasions" for work on a previous contract).

While Plaintiff provides a detailed account of how much money he sent to Snyder in Florida, the Court finds mere payments sent to Snyder from Colorado are insufficient to establish specific personal jurisdiction over Snyder in light of the lack of additional factual allegations to establish Snyder's purposeful availment of the forum state.[5] *Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010) ("While the Court accepts Plaintiff's well-pled allegations as

---

[5] Neither do the two invoices attached to the Complaint, nor the location of the crops grown by Plaintiff in Colorado, lend themselves to a finding of personal jurisdiction over Snyder. This is particularly true in light of the Complaint allegations regarding Texas' connection to the business venture and Plaintiff's two-time travel to Florida to meet with Snyder concerning the business venture.

true for the purpose of establishing personal jurisdiction over Defendant . . . it accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

Plaintiff argues the Court has personal jurisdiction over Defendants because Snyder appeared for the December Status Conference by telephone "as a representative for Defendants" and did not contest the Court's jurisdiction. [#30, p.4.] The Court finds this argument woefully underdeveloped.

Colorado courts have held that an entry of appearance constitutes a waiver of service of process. *DeBuhr v. Hern,* No. 15-CV-02613-PAB-MEH, 2016 WL 9738100, at *2 (D. Colo. Sept. 12, 2016) (citing *Russell v. Craig*, 51 P. 1017, 1018 (Colo. App. 1897) (affirming grant of default judgment and holding "defendants were in court by virtue of their written entry of appearance, independently of summons or service of summons"). Ordinarily, a defendant enters a general appearance in a case by seeking relief which acknowledges jurisdiction or by other conduct manifesting consent to jurisdiction. *In re Marriage of Noon*, 735 P.2d 884, 885 (Colo. App. 1986). This is not the case here.

Snyder responded to service of the Complaint by mailing the Letter. [#7.] In response, the Court vacated the scheduling conference previously set and ordered the parties to appear at the Status Conference. [#15.] Snyder was ordered to appear, and he and AFS were warned that failure to appear could result in default. [*Id.*] Snyder appeared *pro se* at the Status Conference and expressed a desire to defend himself in the case. [#16.] The Court advised him to contact the *pro se* clinic and advised of his option to move for appointment of *pro bono* counsel for both him and AFS. [*Id.*] The

13

Court also ordered Snyder and AFS to answer or otherwise respond to the Complaint no later than February 10, 2020. Neither Snyder nor AFS have done any of these things. [*Id.*]

Based on the above, the Court is not convinced Snyder's presence at the Status Conference "manifested an intent" to consent to the Court's jurisdiction. To be sure, in the Letter (which the Court struck as non-responsive to the Complaint), Snyder stated the Complaint was "unfounded" and he considered it to be "a form of harassment." [#7.] And while Snyder capitulated to the Court's order and appeared at the Status Conference, he did not formally consent to magistrate judge jurisdiction.[6] *See In re Marriage of Lockwood*, 857 P.2d 557 (Colo. App. 1993) (a defendant enters a general appearance by seeking relief which acknowledges the court's jurisdiction or by other conduct manifesting consent to jurisdiction). Moreover, Snyder appeared at a Status Conference, as compared to some other conference or hearing involving substantive procedural issues or addressing aspects of the merits of the case. *See Pulse v. Larry H. Miller Group*, No. 03-cv-02073-WDM-PAC, 2005 WL 1563222, at *10 (D. Colo. June 20, 2005) (defendant waived its personal jurisdiction defense in part by responding to merits discovery); *see also Barton v. Horowitz*, No. 97–cv–1980–EWN, 1999 WL 502151, at *7 n.1 (D. Colo. Mar. 11, 1999) ("certain general appearances by counsel which address the merits of the case may constitute waiver of service"). Significantly, Snyder did not comply with the Court's

---

[6] Indeed, Plaintiff filed the Election Concerning Consent/Non-Consent to United States Magistrate Judge Jurisdiction form without Defendants' signatures because "Defendants have been non-responsive." [#12, p.4.]

orders or advisements and has not participated in this case for more than a year. Under these circumstances, the Court does not find Snyder's appearance at the Status Conference constituted a general appearance. For the foregoing reasons, the Court concludes Plaintiff has not established Snyder purposefully availed himself of the Court's jurisdiction.

Turning to AFS, the allegations regarding personal jurisdiction over AFS are even more conclusory and sparse. They include these allegations: "AFS is a Florida limited liability company formed and solely owned by Snyder;" and "Snyder has transferred or otherwise utilized [Plaintiff's] funds and in-kind contributions for the benefit of Snyder or Snyder's own business, AFS." [*Id.* ¶¶3,18.] Plaintiff's Affidavit adds that AFS "took possession and ownership of the [Machinery]." [#30-1, ¶8.]

For the reasons articulated above regarding the lack of personal jurisdiction over Snyder, Plaintiff has failed to plead sufficient factual allegations, or provide sufficient supporting evidence, to allow the Court to find AFS "reach[ed] out beyond one state and create[d] continuing relationships and obligations with" the forum state. *Burger King*, 471 U.S. at 473.[7]

Because the Court concludes the Complaint fails to establish Defendants purposefully availed themselves of the privilege of conducting business in Colorado, there can be no nexus between the forum and Plaintiff's claims. Therefore, exercise

---

[7] Even AFS's arguable "appearance" at the Status Conference—arguable because AFS was not represented by counsel and an entity cannot represent itself—did not confer jurisdiction for the same reasons Snyder's appearance did not.

of personal jurisdiction over Snyder and AFS is unreasonable and does not comport with fair play and substantial justice.

\* \* \*

For the above reasons, the Court RECOMMENDS Plaintiff's Motion be DENIED.

DATED: July 6, 2021.

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge

**Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings <u>and legal conclusions</u> of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).**